UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **UNITED STATES,**<br>Plaintiff<br><br>vs<br><br>**DAHIR NOR IBRAHIM,**<br>Defendant | Case No. 3:10-00260-15<br><br>Hon. Haynes |

**BRIEF IN SUPPORT OF**
**MOTION TO EXCLUDE GOVERNMENT'S PROPOSED EXPERT TESTIMONY**

Defendant respectfully moves for an order excluding the testimony of several government proposed experts.

The government has stated that it intends to call the following individuals as experts:

1. Margie Quin
2. Beverly Cotton
3. Nathan Wasgatt
4. Kenneth Blue
5. Dr. Michael J. Spellman
6. Dr. James Lewis

**Background**

On January 11, 2012, the government filed a Motion in Limine to Admit Proof of the Ages of its Victim Witnesses. (D.E. 1078) In that motion, the government proposed to prove the age of the victims, "a pivotal issue in the Government's proof and case in chief", by "victims' testimony, their physical appearance, and other forms of evidence." (*Id.*, p1) Since this evidence was "not initially prepared in anticipation of trial", the government argues, it is not subject to being challenged under the confrontation clause. (*Id.*, p2) The "other evidence" was proposed to be used to "reinforce and corroborate testimony and physical appearance" and included "both public and private records in order to bolster the accuracy of the age evidence." (*Id.*, p3)

1

Additionally, the government noted that it would "submit other forms of evidence, such as public records; private records belonging to churches, physicians, hospitals, and the victim's family members; and testimonial evidence, including out-of-court statements, reputation, and facts known to witness that are indicative of age." (*Id.*, p 3-4) Nowhere does the government mention a word about expert testimony of age based on wrist bones or dental exams.

On February 22, 2012, the Court issued an order requiring the government to file a "revised witness list and by each witness's name identify the particular Defendant(s) against whom each witness will testify." (D.E. 1586). On March 9, 2012, the government served a witness list to defense counsel via email. (D.E. 1862) This witness list, however, did not disclose who was being called as a proposed expert nor what the basis of their expert opinion was. (It did designate one witness as having "specialized knowledge" but still did not disclose the basis of that knowledge.) One of the government's proposed experts, Beverly Cotton, did not appear on this witness list. On March 22, 2012, yet another witness list was provided and again, no expert witnesses were identified other than Margie Quinn [sic] with "specialized knowledge".

On March 23, 2012, the entire witness list and order of witnesses was thrown into chaos when Assistant U.S. Attorney Van Vincent sent an email to defense counsel completely changing the order of witnesses for the first week of trial. Only one week's worth of witnesses was provided in the email. As noted in the email, this was "a change from the previous list provided". Some time around March 26, 2012, a problem occurred with Jane Doe 1 such that the government moved to dismiss certain counts against some defendants against whom Jane Doe 1's testimony was apparently crucial. (See, e.g., D.E. 2139, Government motion to dismiss). This would necessarily eliminate a number of witnesses, such as the custodian of records from JD1's middle school, Witness Number 15. **However, to date, no new or revised witness list has been provided.**

**On the first day of trial**, March 20, 2012, the government filed a Notice of Filing Expert Summaries and Resumes. (D.E. 2037) Included were the resumes of Kenneth Blue (D.E. 2037-1), and Sarah Blonk-Buck (D.E. 2037-2). In a separate filing (D.E. 2039), the government also filed the resumes of Peter Lo (D.E. 2039-1), Margie Quin (D.E. 2039-2), and Matthew Rucker (D.E. 2039-3). The government, however, did not disclose any other information about these

2

proposed experts nor did it provide any other information directly to defense counsel.

On March 24, 2012, AUSA Cook emailed defense counsel and stated that Margie Quin, who purportedly has "specialized knowledge in sex trafficking", would testify as follows:

(1) the existence of a sex trafficking market in Tennessee for minors;

(2) the distinction between sex trafficking and smuggling;

(3) the dynamics of sexual trafficking, including the use of manipulation;

(4) and the difficulty sex trafficking victims suffer when testifying against their perpetrators.

On March 25, 2012, the undersigned emailed AUSA Cook and asked the government to please "provide us with the basis of her knowledge, including any articles, research studies conducted by her or others, or other material she is relying on." In response, on March 26, 2012, AUSA Cook replied by email with nothing but a hyperlink to the Tennessee Bureau of Investigation's website, www.tbi.state.tn.us. Going to that provided link did not provide any particulars about Margie Quin's specialized knowledge or the basis of her opinion. The undersigned complained and stated

> [T]his is nothing but a link to a TBI propaganda site and says nothing about the "basis of her knowledge" on "(1) the existence of a sex trafficking market in Tennessee for minors; (2) the distinction between sex trafficking and smuggling; (3) the dynamics of sexual trafficking, including the use of manipulation; (4) and the difficulty sex trafficking victims suffer when testifying against their perpetrators." Her resume, similarly, says nothing about the basis of her knowledge and is nothing but another bragging sheet without revealing from where she acquired her "specialized knowledge".
>
> Did she conduct her own original research? If so, was it cleared by an IRB? Where is her research proposal? Did she interview minors claiming to have been trafficked? If so, what protocols did she use? Did she receive training on any protocols? If so, by whom? Where are the materials she used? Has she published any articles in peer-reviewed journals? Does she subscribe to any such journals? Does she even read peer-reviewed journals? Where did she learn about "manipulation" as a tool in sex trafficking?

In response, AUSA Cook merely provided a pdf file which was previously filed with the Court as D.E. 2459-3. Defense Counsel Tom Drake emailed AUSA Cook and stated "I do not believe it complies with expert disclosure requirements. It is not clear which of the following are Margie

3

Quin's: opinions, basis and reasons for opinions, witness's qualifications. There may be no more info available, if so please advise." No further disclosure or responses were provided.

On April 2, 2012, the government emailed defense counsel the resumes of Sarah Blonk-Buck, Nathan Wasgatt, and Beverly Cotton. This was different than what the previously provided witness lists had disclosed and different than what the government had filed with the Court through its Notices of Filing Expert Summaries and Resumes.

On April 2, 2012, the undersigned defense counsel emailed Assistant U.S. Attorney Blanche Cook and asked specifically, "[s]imilar to my request for Agent Quin, please provide a summary of the expected opinion testimony for each and every government proposed expert along with the basis for their specialized knowledge consistent with Rule 16. Time is of the essence and their CV's or resumes (self serving as they are) are not sufficient. Nor is their listing on the government's Witness List." In response, AUSA Cook stated that the government was "still deciding if we are going to use Quinn. I provided you with information about her. I will send a summary of the other experts shortly." On the same date, the undersigned responded again that "we need to know like right now so that we can prepare to challenge her qualifications and basis of her opinion. That is not something we can do on the fly.... I await the proper disclosures regarding the other experts (not just their summaries but more importantly the basis of their specialized knowledge)."

On April 3, 2012, AUSA Cook emailed stating that the government was no longer planning on calling Sarah Blonk-Buck. Regarding the Rule 16 required disclosures for the other experts, the government stated, "You have Beverly Cotton's resume. She did the assault examination of JD2. The basis of her testimony is summarized at Exhibit 197C, line 358 in the exhibit list. Nathan Wasgatt's testimony is summarized at Exhibit 401 in the exhibit list. As to the qualifications for all witnesses, we have provided you with their resumes." Again, no basis of their specialized knowledge was provided. When asked when they would testify, the only time frame defendants were provided was "[a]fter the victim witnesses have testified." (Note: Aside from JD1, who is apparently now not going to testify, there are 6 other Jane Does.)

Since these various disclosures and correspondence, the various declarations filed by I.M.H and JD2's mother have been shown to be perjured as they regard the age of JD2. In a

4

desperate attempt to salvage the case, the government, on April 8, 2012 (Easter Sunday), at 3:55 p.m., emailed defense counsel and disclosed a new set of proposed experts to establish JD2's age. Remember that the government had planned only to provide JD2's and JD2's mother's testimony along with public records to establish her age. (D.E. 1078) The experts propose to estimate the age of JD2 in 2009 by radiographs of JD2's wrist and teeth taken on April 7, 2012.

**LEGAL ARGUMENT**

Federal Rules of Criminal Procedure 16(a)(1)(G) provides:

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. ... The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

The Advisory Committee Notes ("Notes") for Rule 16 state in relevant part:

> [T]he requesting party is entitled to a summary of the expected testimony. This provision is intended to permit more complete pretrial preparation by the requesting party. For example, this should inform the requesting party whether the expert will be providing only background information on a particular issue or whether the witness will actually offer an opinion. In some instances, a generic description of the likely witness and that witness's qualifications may be sufficient, e.g., where a DEA laboratory chemist will testify, but it is not clear which particular chemist will be available.

FED. R. CRIM. P. 16, Advisory Committee Notes (1993 Amendment). In addition, in order to comply with Rule 16(a)(1)(G), the Notes specifically state that, "perhaps most important, the requesting party is to be provided with a summary of the bases of the expert's opinion." *Id.*

Without regard to whether a party would be entitled to the underlying bases for expert testimony under other provisions of Rule 16, the amendment requires a summary of the bases relied upon by the expert. That should cover not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts. If a party fails to comply with this rule, Rule 16 instructs that the Court "may" do any of four things:
(1) "order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;"

(2) "grant a continuance;"

(3) "prohibit that party from introducing the undisclosed evidence;" or

(4) "enter any other order that is just under the circumstances."

F.R.Crim.P. 16(d)(2).

In *United States v Davis*, 514 F.3d 596 (6th Cir. 2008), the defendant sought to exclude the government's expert testimony of two forensic chemists on the basis that the Court had ordered expert disclosures to be made three weeks before trial. The defendant had requested opinion summaries and, in a second letter, had requested "reports, results, and opinions of expert examinations, tests, experiments and analysis done on any person or physical items or other evidence in connection with this case." *Id.*, at 603-04. All that the defense received, however, was a document titled "Tennessee Bureau of Investigation Knoxville Crime Laboratory Official Forensic Chemistry Report dated 8/19/05." (*Id.*, at 604) An accompanying letter merely stated that a "chemist will testify consistent with the laboratory report. The chemist's testimony will be based on training, including formal education, and experience, including having conducted numerous such examinations." *Id.* To the court, the government attorney stated that "the disclosure he provided in this case was 'the same disclosure' that he had 'made in every drug case' that he had 'prosecuted for the last 20 years.'" The district court held the disclosure was sufficient and denied excluding the testimony of the government's chemist.

The Sixth Circuit, in reviewing the issues, summarized the defendant's position as being "that the government failed to comply with Rule 16(a)(1)(G) because it did not provide the bases for the chemists' results, **something clearly required after the 1993 Amendments to the Federal Rules of Criminal Procedure.** Also, Davis argues that the government was obligated to comply with the pre-trial discovery order." *Id.*, at 611 (emphasis added). The Sixth Circuit went on to rule:

> **We conclude that the district court incorrectly applied Rule 16(a)(1)(G) in this case because the government's submissions did not adequately describe the "bases and reasons" for the chemists' opinions**. See FED.R.CRIM.P. 16(a)(1)(G). The government provided defense counsel with four documents. First, the government provided defense counsel with a copy of the Tennessee Bureau of Investigation Knoxville Crime Laboratory Official Forensic Chemistry Report, dated August 19, 2005. Second, the government attached a

6

letter to the report indicating that if the case went to trial "[a] chemist [would] testify consistent with the laboratory report." J.A. at 100 (10/11/05 Ltr. to Paula Voss at 2). In addition, the letter stated that "[t]he chemist's testimony will be based on training, including formal education, and experience, including having conducted numerous such examinations." Id. Third, upon the addition of another count to the indictment against the defendant, the government sent a letter to defense counsel on October 26, 2005 that included a copy of a second laboratory report related to the second count.

      Finally, on March 28, 2006, the government filed a "Notice of Expert Testimony Pursuant to Rule 16 of the Federal Rules of Criminal Procedure," which described, in broad terms, the educational background of the chemists, their experience, and the basis of their findings. J.A. at 94-95. This document devoted one sentence to the bases for the opinions of the chemists: "The findings of each chemist are based upon his/her education, training, experience and scientific tests he/she performed on the substances submitted." J.A. at 95. Chemist Silvers testified at the trial that the government did not ask her for her notes (serving as the basis for her conclusions) until the day that she testified (after a request from the district judge). J.A. at 374, 473 (Trial Tr. at 239:9-16, 338:9-24).

      **We conclude that none of these documents adequately indicate the bases for the chemists' laboratory reports; if Davis had hired a chemist, he or she would not have been able to analyze the steps that led the government's chemists to their conclusions. The prosecutors clearly violated Rule 16(a)(1)(G).**

*Id.*, at 612-13 (emphasis added).

Like the prosecutor in *Davis*, all that the government prosecutors in this case have provided are resumes and, in the case of Agent Quin, a "study" that was conducted by some Vanderbilt students that does not match the expected opinion testimony she is expected to give. This "study" purportedly submitted a survey questionnaire to law enforcement officers across the state but the questionnaire used is not included in the study and was not provided. It also includes a "case study" of the juvenile records of one person but does not contain the records. Nor are any notes or transcripts of focus groups included. [1] The government has not offered the defendants any of these as the "basis" for the expected testimony.

In the case of Beverly Cotton, Defendants were telephonically directed to Government's premarked Exhibit 197C which is Nashville General Hospital at Meharry, Our Kids Center report

---

    [1]    One participant of a focus group used to support some of the conclusions of this "study" was none other than the prosecutor in this case, Van Vincent.

7

concerning a medico-legal examination of JD2. The report also consists of hearsay statements made by Metro PD Sex Crimes Unit officer Heather Baltz, and a Social Worker by the name of Cindy Groll. None of the underlying information has been provided.

In the case of Drs. Spellman and Lewis, aside from the late disclosures, no CV's have been provided nor any basis to assist Defendants in examining whether the estimation of age based on X-rays of a person's wrist and teeth are based on sound scientific methods and data that have been peer-reviewed and accepted by the scientific community. [2]

As for Nathan Wasgatt, a person with only a High School diploma and an Associates Degree in Law Enforcement, Defendants only have a resume and a reference to another government exhibit, Exhibit 401, which is nothing more than a "Laboratory Examination Report".

These disclosures are completely deficient under Rule 16. Defendant's have repeatedly asked for appropriate disclosures only to be rebuffed and forced to play a guessing game as to who will testify as an expert, when, and based on what. Defendants conduct research on one expert witness only to be told at a late hour that the witness will no longer be used. Then, two weeks into trial, two medical experts who were never disclosed before and clearly added for the sole purpose of salvaging a damaged case are added with no disclosed CV's of the doctors or basis of their opinions.

Out of the four possible remedies allowed under Rule 16, disallowing these experts' testimony is the only just remedy. A continuance of the trial is unwarranted as it has already been continued by almost two weeks because of other late government disclosures. [3] Ordering the appropriate disclosures is unreasonable because defense counsel will be in trial all day and simply won't have time to obtain needed defense experts to refute the expected testimony or to prepare for a *Daubert* hearing. The lack of proper Rule 16 disclosures is blatantly deficient and

---

[2] A preliminary, cursory search revealed extensive doubt in the scientific community of the foundation of this proposed testimony. See, for example, Braude, et. al, "Accuracy of Bone Assessments for Verifying Age in Adolescents - Application in Sport", SA Journal of Radiology, June 2007, p.4.

[3] From the observation of this defense counsel, the jury was clearly annoyed last week when it was told to report back on the morning of April 9, two weeks after having first been summoned for jury duty and selected for this case.

the late disclosures violate the right of Defendants to have a fair trial, not a trial by ambush and surprise.

    Therefore, Defendant Dahir Ibrahim, on behalf of himself and <u>all other defendants</u>, moves for an order disallowing the proposed experts' testimony.

                                               Respectfully submitted,

                                               /s/ Jerry Gonzalez
                                               Jerry Gonzalez (18379)
                                               Attorney for Defendant (15)
                                               2441-Q Old Fort Parkway
                                               No. 381
                                               Murfreesboro TN 37128
                                               615-360-6060
                                               jgonzalez@jglaw.net

**CERTIFICATE OF SERVICE**

      I certify that I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following:

Van Vincent
United States Department of Justice
110 9th Avenue, South
Suite A-961
Nashville, TN 37203-3870
Phone: (615) 736-5151
van.vincent@usdoj.gov

      This the 8th day of April, 2012.

                                            /s/ Jerry Gonzalez